22-8019 Wyoming Gun Owners. Please counsel for appellant. When you're ready, make your appearance and proceed. May I please report? Counsel, my name is Jim Peters. I represent the state of Wyoming. This case arises out of constitutional challenges to the definition of electioneering communications and the affiliated reporting and disclosure requirements associated with electioneering communications over a certain threshold. I want to first focus on the reporting and disclosure requirements in Wyoming Statute 22-25-106 subsection H. When considering or test that applies is exacting scrutiny. And this was clarified as recently as 2021 in Americans for Prosperity Foundation. The court articulated that the test is there must be a substantial relation between the disclosure requirement and a sufficiently important government interest and that the disclosure requirement must be narrowly tailored to the interest it promotes. It's clear that narrow tailoring in this context does not require that the statute be the least restrictive means. But it did put an emphasis on fit and said that fit between the government interest and the disclosure requirements must be reasonable. So with this backdrop that the district court analyzed these claims and while the district court correctly found that the government had included there were no temporal limitations on contributions that would be subject to reporting. And second, the district court found that there was a mismatch between the state's interest and the reporting requirements. On that first point, doesn't the statute need to be limited to the election cycle to make sense? I mean, that just seems really fundamental in this area of the law that we're not going to look back three or four elections and require disclosure on a forward-looking basis. Absolutely, Your Honor. And the statute does limit reporting to the election cycle. And contrary to the district court's conclusion that there are no temporal limitations, the statute does inform us of that. Specifically, the end of the reporting period is the day of the election. And how do we know that? This is Wyoming Statute 22-25-106, subsection H, Romanet 2. It requires that the report be supplemented through the day of the election. What that tells us is the day of the election, that is the end date of the reporting requirement. We're talking about the beginning date, though. Correct, Your Honor. What it also tells us is the beginning date for the next cycle is the day following the election. So in this particular instance, the electioneering communication was made during the primary election cycle, which occurred on August 18th of 2020. So would it be your position that if they were to file, you know, 18 months from now on an ad, that they wouldn't have to disclose that money? That's correct, Your Honor. Any contributions received prior to the election cycle or after the election cycle for the particular report that's at issue would not be required to be disclosed. To build on that, that would have started after the date of the primary in 2020. Because presumably if there was an electioneering communication that triggered a report, it would have been disclosed. Or if there was not an electioneering communication that triggered a report within the primary cycle, the legislature has specifically identified reports based on particular elections. So we would not be looking back or asking. Has the Secretary provided any guidance or regulatory framework that would alert organizations to that interpretation? Your Honor, there have been no rules promulgated or written guidance issued. The forms at issue in this case allowed the entity to fill in the applicable dates. So it was left to the entity to determine those dates when completing that report. That's one of the problems they're alleging here is that this scheme requires a bit of guesswork on their part, and that goes back to Judge Skavdal's vagueness decision that on penalty of these penalties and fines, you've got to guess what the Secretary's expectations are, not just on what the election cycle contribution and spending cycle is, but also how far they need to dig into their organizational structure to determine what's, you know, what's a reportable expenditure. And like, without guidance from the Secretary, doesn't that argument have some force? In particular, this relatively new statute, right? And is this the first case under it? Yes, Your Honor, this is the first case. So, I mean, they're kind of guessing what you're looking for, and there's been no guidance to them. You know, there's been no clarity brought to either the reporting requirements or what the specifics should be. You know, First Amendment, is this in fact going to chill a speaker's ability to engage in political or issue advocacy? Your Honor, certainly all the disclosure laws in general have some burden on freedom of association, but simply because they're disclosure laws doesn't mean that they're constitutional. They have to be narrowly tailored to that interest. Exactly, Your Honor. And it's the State's position that, contrary to the District Court's conclusion, that there is a temporal limitation, although you are correct that no particular written guidance has been issued on this. But we believe that it is clear that from the Your Honor, the answer to that question depends on the organizational structure. The statute, while not well, it doesn't expressly limit contributions that are subject to reporting to only those that are earmarked, it provides organizations with flexibility to determine how they're going to operate and determine what communications are. Well, are you going to, could the Secretary ding them under the statute for failure to provide a portion of their Executive Director's salary as related to the radio ad? Your Honor, if they're, if WIGO didn't have a practice, which in this case it does not have earmarking, then it is the State's position that all contributions received within that particular election cycle would relate to an electioneering communication. I first asked about expenditures. Could the Secretary go after WIGO if they fail to provide a portion of their overhead as an expenditure related to the electioneering communication? Your Honor, I'm not sure that we've had occasion to consider that particular fact. It could. Under your truth, and what's the, what error did the District Court make in concluding that that was either vague or, you know, flunked narrow tailoring? In this case, in terms of the expenditures, the parties have stipulated to the expenditure for, that WIGO paid the radio broadcasting entity to air the ad. There's no dispute about that, but we still have not, in fact, received any report from WIGO, even at a minimum, listing that one particular expenditure. I know you haven't, and the reason we're here is because the District Court concluded that they had to guess what you wanted, and that's not permissible in the campaign finance context, given the Supreme Court and It, it allows various organizational practices. If an entity does earmark funds. Okay, so let me ask you about that. How do we know that? How do we know it allows that, these various ways of complying? Your Honor, the statute requires that all expenditures and contributions that are related to must be reported. So in the absence of an express earmarking requirement, which we do not have here, it's up to the entity who's, the entity who must submit the report to determine what expenditures are related to that particular. Okay, so, so we don't, we don't know that. The statute doesn't tell us, well, you're telling us this, but the statute doesn't tell us this is what I'm getting at. Correct, Your Honor, and it would be our position that the statute doesn't over-regulate. It doesn't mandate WIGO to create a separate bank account to then require its contributions for any. Understood, and which brings me to maybe another concern that's, that's lurking out there. We may not have ever required it, but we have cases that have looked favorably upon statutes with earmarking provisions in them, right? Absolutely, Your Honor. And it seems, it feels to me that, that you're sort of you're, you know, where we've previously said government entities, it's a good thing if you do this, you're flipping it over and saying they have to do it. That if, if they don't, although you didn't tell them they had to do it, that if they don't do it, you're going to make them allocate a portion of every dollar they receive from the $1 contributions to the $1,000 contributions to the, to the ad in question. Your Honor, earmarking is just one component of determining whether the statute is narrowly tailored. Agreed, but I mean, do you agree with me you're flipping it over, that responsibility over onto them? Your Honor, you may not like my terminology. Understood. Depending on, on that particular entity's organizational practices, it may be the case that, that WIGO would have to disclose all of the contributions it received within that period of time because it does not have a practice of earmarking. Do you, do you agree with me that organizations often structure their own internal policies based upon statutes and regulations? Perhaps, Your Honor. We don't have any, well, actually the record does reflect in this case that WIGO did not have a practice of earmarking because it's not required. So you're correct, Your Honor. Okay. If, if WIGO had a hundred donors, say over $1,000, could, for purposes of the report, could they just pick two, two of those donors and designate them as they're related to expenditure, the contribution related to that expenditure? Your Honor, it's, it's our position that it has to be based on, on some sort of reasonable method. If, if they had a I mean, I hear a lot of expectations here, but, you know, in this area, the government has to communicate with some clarity what, because we're, you know, the Supreme Court is worried about regulation of issue advocacy that's not related to a political campaign. And, and as Judge Carson said, you know, you've got them guessing and wondering and, you know, hoping they do it right. And if they do it wrong, you're going to write a letter and say, you're wrong and you're going to be fine for this. Your Honor, unless the secretary had reason to believe that the report was erroneously submitted, we would, the secretary would have received the report and, and we would have moved on, unless there was some other reason that would have called it to attention. Well, that doesn't, that doesn't go to, towards a whole chilling aspect of, of people out there who are just uncertain what to do. I mean, you used the word that stuck in my mind, flexibility. Well, the other side of flexibility is uncertainty. And, and to Judge Timcovich's point, in this area, you're supposed to minimize uncertainty so that people can speak with some confidence that they're doing, they're going to be fined or not for doing, for, for not disclosing speech. And so, so why is flexibility in this area a virtue? Flexibility allows, perhaps there are organizations that, that have no intent to cause an electionary communication, then they would not need to do that. But it's, it's up to the entity to decide how they want to conduct their business, whether it is... Well, our decision's going to affect all kinds of entities, C4s, that are out there for a range of issue and charitable activities. And, you know, I, I wonder about an organization, you know, kind of a mom and pop, you know, a small club that's, wants to engage in issue advocacies. Then all of a sudden, you know, the CEO of a coal company comes in and wants to run for political office, their hair's on fire, they want to do a, they want to do a campaign ad at that point, even though historically and organizationally that's not what their primary purpose is. Now all of a sudden, they're on the hook to disclose all of their, all of their donors and, you know, they really didn't have an expectation that that was going to be a regulated activity until, you know, after the fact. But, you know, how do we craft a rule that, you know, applies to maybe more sophisticated political operators against the less sophisticated? Your Honor, the, the electionary communications definition and the reporting requirements are structured only to cover the functional equivalent of express advocacy. Unlike the statute considered by Independent Institute by this court, unlike the Lakewood Citizen Watchdog Group case that the court, the district court relied on, this statute is limited. And we are only talking about the functional equivalent of express advocacy. And then it's further limited to only within a certain period of time and only to contributions that fit within, within the statute. And I see that, that I'm out of time, but briefly wanted to note that there's also, while there is no express opt-out provision, the relate to provision does provide that. If entities or individuals who submit a contribution to WIGO do not want their donation to be used for that, they can earmark it away or submit it, that is the case. Judge Skabdal gave us a series of hypotheticals that he concluded led to a vagueness finding here. Why was his interpretation incorrect about, you know, gas money and salaries and the like? What, what was the reversible error in that analysis? Your Honor, the first error in Judge Skabdal's hypotheticals were, were the temporal limitations. He had hypotheticals about multiple donations over time that aggregate over $100 over a five-year span. Those would not be subject to this, as we discussed earlier, for the temporal limitation. Related to non-cash expenditures, Your Honor, it... I thought you agreed with me that those, those theoretically could be encompassed with them. They could be related to a particular communication. I guess it would depend on how that communication was, was developed or produced or disseminated and whether they were related to or not. But that, that would depend on the particular communication and the facts that we have here, in this case, in the as-applied challenge, because the facial challenge was dismissed by the district court, in the as-applied challenge, all we have is the list of everybody's lies. If the secretary would say, you know, here's the list that's reportable and here's the list that's not, you know, maybe we wouldn't be here if they, if they had more clarity there. Thank you. Thank you. Thank you. May it please the court, Endell Cold for Wyoming Gun Owners. The district court correctly struck down Wyoming's electioneering communications disclosure provision because it fails exacting scrutiny and is vague. The court's opinion on those issues was sensible and well-reasoned. The only problem being that the court enjoined the secretary from collecting the report from WIGO rather than enjoining enforcement of the statute altogether. If it's illegal to force WIGO to file the report, it's illegal to force anyone to file the report, especially if they don't have earmarked contributions. And without a disclosure component, the entire EC regime is essentially gutted. The district court should have just come out and said that. Was the facial challenge briefed on summary judgment? It was not because it had been dismissed by Judge Skabdal on the motion to dismiss. So that's really, I mean, that's really not here, is it? Did you file a notice of appeal on that? Well, a cross appeal does cover the dismissal. Did you file a notice of appeal of the dismissal order? Yes, Your Honor. Okay. Yes. And we would argue, moreover, that it's, you know, as this court has recognized and the Supreme Court has recognized, it's not an antipodal limitation or distinction between facial relief and as-applied relief. You can have a greater category of as-applied relief going beyond just WIGO, the party, to apply to the district court. And the district court can apply it to other parties that are similarly situated. In this case, any party that does not have earmarked contributions to report. Simply put, the disclosure provision here fails exacting scrutiny because it's not narrowly tailored. Neither the statute's text nor the Secretary of State tells speakers how to determine which contributions relate to an EC. There's no earmarking provision, as the court has for requesting advice from the Secretary of State. So do you think this statute could be saved with some regulations from the Secretary of State? This statute, no. But, you know, we don't even have the regulatory guidance. They're trying to kind of invent it ex post and read provisions into the statute after the fact. Even if the, you know, if the statute were to say, you know, we're going to have a new statute, and I don't want to speculate about hypothetical statutes, but if the Wyoming legislature were to take another run at this and come up with a new statute, you know, we would hope that there would be a process for requesting advice from the Secretary of State's office. Well, if the Secretary issued guidance saying you needed a segregated account for donations that were going to be used for express, you know, electioneering communication, wouldn't that be totally consistent with what we've upheld in the Colorado statute or the New Mexico statute in the circuit, and consistent with Supreme Court guidance? I think forcing us to earmark communications is a different question than what was presented in Independence Institute. I would have to see the text of the exact statute. I'm not sure I'm prepared to agree with you on that, Judge. Well, would an earmarking provision here have saved the state's primary problem in the district court? Probably. Probably. And, you know, I see related to in a lot of contexts, and I think most of us intuitively have a sense of what that means. And, I mean, maybe if you get too many lawyers and too many judges together, it suddenly becomes ambiguous and vague. But wouldn't a, you know, just like, you know, this reasonable interpretation test for express advocacy, isn't there sort of a reasonableness aspect to relate what, you know, what an expenditure or contribution, if it relates to express advocacy? Shouldn't we apply kind of a common sense, natural interpretation there? You know, I'm a fan of common sense, and I think reasonableness does a lot of work in a lot of situations, but I think in this situation, no. Because the proffered interest that the state has here is the informational interest and transparency. And transparency is an extra constitutional value. The right to speak is a constitutional value. And when vague terms like relate to or reasonableness or multi-factor balancing tests that we don't know how to apply, when they burden speech rights, you're having an extra constitutional value colliding with the constitutional value. And it would be our position that the constitutional imperative should take precedence over the notion of transparency, which is nowhere to be seen. And, you know, is the scheme here sufficiently tailored for, you know, a typical issue organization to understand what its disclosure obligation is? We would say no, Your Honor. And I would note here particularly at the statute doesn't say the things that the Secretary of State argued for the first time at the summary judgment stage below. They said before Judge Skabdal at the S.J. stage, for the first time, we're going to limit it to contributions made within the election cycle. They don't define election cycle. Perhaps they didn't do it today. You and he seem to sort of have an understanding. I still don't know, and I'm a relative of smart guy, I hope. You know, perhaps they mean within the electioneering communications window. If so, they haven't put that in writing. Maybe they mean something else. It sounded like he might mean something else. I also want to point out this contradicts their stipulation earlier in this case that there were no limiting constructions in place, which we would submit as a binding judicial admission. That's a J.A. 344. Earlier in the case, in the motion to dismiss briefing, the Secretary was making the opposite argument. For a broadening construction, if you don't have earmarks, he said, or some other system for tracking donations, then WIGO should just disclose all donations. And there was no temporal limitation to the election cycle. These changing arguments show that even the Secretary of State doesn't know what this statute means. Even if we accept their latest argument, that only donations within the election cycle need be disclosed, whatever election cycle means, you still have the mismatch problem. Just because someone donates to WIGO close to an election doesn't mean they were donating to support any particular message. The straight state's approach would force WIGO to arbitrarily select some of WIGO's donors and inaccurately disclose them as having donated to support communications about a particular candidate, a candidate that the donor may not know about or have any particular opinion about either way. There is no government interest in promoting a false association between a donor and a candidate. Would they be selecting donors or be required to list all donors? That argument has changed. Earlier in the case, they were saying you have to list all donors. Now they're saying all donors within the election cycle, whatever that means. But the money that's donated within the election cycle may not be going to fund any particular electioneering communication. The declaration of Aaron Doerr, the principal of WIGO, is not going to fund any electioneering communication. The other thing that's true about the principle of WIGO, which is in the record and uncontroverted, is that WIGO is often raising money 18 months before an election for ads that might run close to an election. So it's not that there's a direct correlation between, oh, we're raising money within this time period and then we're immediately spending that money. And so, essentially, we would have to arbitrarily select some donors to essentially offer up to the state as... Some meaning defined by the temporal period. Because I guess what I'm going back to is Judge Tempevich posited a hypothetical in which, for example, you pick two donors. Would that be sufficient? Let's assume temporal boundaries. At least the designers did it. Even within the temporal boundaries, the obligation would be to disclose at some level allocating each donor as having had the intent to fund this electioneering communication. I think that's a fair interpretation of their... Now, I want to be clear. There is no temporal limitation anywhere in the statute. But if we accept the premise that the Secretary of State is now arguing that there is a temporal limitation, he has not explained do we have to proportionally allocate a portion of every donation or can we pick two that might cover a particular ad or form of speech and essentially offer them up to the state as sacrificial disclosures. Again, we don't think it's fair to WIGO. We don't think it's fair to other speakers. And we don't think it's fair to donors to have this kind of regime. When the state regulates speech, the state should be clear about how it's going about regulating. And it should give clear notice so parties can essentially conform their conduct to, you know, understand what the consequences are going to be of speaking or of donating to an entity like WIGO. Have you argued that this statutory scheme reduces your ability to obtain donations or scares away donors from giving money to your organization? Yes, we have. Is that in the record somewhere? Aaron Doar's declaration covers the fact that WIGO's donors have to give money to the government. And it's in Doar's declaration. In addition to that, I would argue it's self-evident, particularly people that have strong feelings about the Second Amendment, they don't want to be on government lists. Yeah, I understand that. And some donors, I mean, the organization decides to endorse a candidate or run a, I know you don't think this is a campaign ad for Mr. Johnson or whomever. Donors may not support Mr., you know, I can see where a donor would support your mission, but not your decision on who to support. That's our point exactly, Your Honor. But anyway, you know, that's neither here nor away. What we're talking about is whether Wyoming can enact a reasonable disclosure system. And, you know, it seems to me that just Judge Schapel was really over slicing the onion on what relates to means. And I know you're a sophisticated election lawyer, but, you know, you could have advised WIGO on how to comply with this statute. You could have filed a report, and you never did. And, you know, then maybe there would be a back and forth with the Secretary of State on what an expenditure related, a related expenditure related contribution is. That really didn't happen here. And, you know, do we have to just look at the statute in isolation without, you know, some, you know, real world experiential aspect of, you know, an organization trying to, in good faith, to comply? I think a couple of points. So first of all, I want to emphasize that it's the state's burden to justify their statute, because it's their burdening free speech rights. And throughout this case and throughout the argument and the briefing, the state keeps trying to shift the burden to WIGO. That's not how it works. And implicit in your Honor's question is that somehow WIGO had a duty to fix the statute by starting a conversation with the Secretary of State who provides no means to seek advice, and we should have filed an amendment. I would also note that the teeth, the enforcement stick of the statute has changed and been amended since we originally brought the suit. When we brought the suit, we were looking at a one-time $500 fine. We took the hit, we paid the fine, and we sued in federal court, which was our right to do. In 2022, the statute was amended to now provide for a $500 daily fine, and all reports must be submitted under penalty of perjury. So potentially you're looking at criminal sanctions if you guess wrong, because again, there's no way to get information from the Secretary of State about how to properly fill out these reports or what to disclose. If you guess wrong, you're looking potentially at criminal sanctions. That's a big deal. And I see my time has expired. Thank you. Thank you. Thank you. You didn't have any time, did you? Okay. Case is submitted.